# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROTIMI OWOH, *et al.*, | ) | |
| *Plaintiffs*, | ) ) ) | Civil Action No: 16-cv-4581 (PGS)(TJB) |
| v. | ) ) | |
| JASON S. SENA and CUTOLO MANDELL LLC, | ) ) ) | MEMORANDUM AND ORDER |
| *Defendants*. | ) ) ) | |

Presently before the Court are three motions: Plaintiff Rotimi Owoh's motion for leave to appeal the Court's July 5, 2017 order (ECF No. 43); Defendants Jason S. Sena and Cutolo Mandell LLC's motion for summary judgment (ECF No. 46); and Plaintiff's cross-motion for summary judgment (ECF No. 57). For the reasons discussed herein, Defendants' motion for summary judgment is granted and Plaintiff's motions are denied as moot.

## BACKGROUND

This matter arises from Defendants' alleged violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA), and the United States Bankruptcy Code. Plaintiff contends that Defendants, both of whom are engaged in debt collection, sought to collect debt that was previously discharged in a bankruptcy proceeding and have since filed a lien on his property, in an effort to collect this debt.

Plaintiff owns a condominium in Ravens Crest East at Princeton Meadows Condominium Association, Inc. (the "Association"), in Plainsboro, New Jersey. (Defendant's Statement of

1

Material Facts [DSOMF] at ¶ 1). Article 7 of the Master Deed for the Association sets forth each unit owner's obligation to pay designated fees or special assessments:

> Section 7.1 <u>Creation of the Lien</u>. Every Unit Owner by acceptance of a deed or other conveyance for a Unit, whether or not it shall be so expressed in any such deed or other conveyance, shall be deemed to covenant and agree to pay Association Fees, by way of annual or special assessments or charges as hereinafter more particularly described. All Association Fees, together with such interest thereon, late charges, and cost of collection thereof (including reasonable attorneys' fees) shall be a continuing lien upon the Unit against which each such assessment is made and shall also be the personal obligation of the Owner of such Unit at the time when the assessment falls due.

(ECF No. 46-2 at 12).

In June 2009, the Association obtained a $5.5 million unsecured loan from Capital One Bank to finance the costs of an ongoing renovation process of the Association's buildings and grounds. (DSOMF at ¶ 2). Plaintiff was not a party to this loan. (*Id.* at ¶ 3). However, to repay the loan, the Association charged a special assessment to each unit owner of the Association, and provided owners with a "Frequently Asked Questions" pamphlet, which explained the conditions of the Association's loan, and the options that unit owners had in paying their respective shares. (*Id.* at ¶ 6; ECF No. 46-2 at 36). The Association also explained that because the loan was made between it and Capital One Bank, the loan would not affect any unit owner's credit report; however, failure to pay the special assessment might. (ECF No. 46-2 at 38). Unit owners, including Plaintiff, were presented with the option of: (1) paying the Special Assessment in full ($10,102.00) by September 1, 2009; (2) remitting monthly payments of $123 for a period of "10 years . . . at a fixed interest rate of 6.80%"; or (3) paying 25% down and a reduced monthly payment for a period of ten years. (DSOMF at ¶ 7). On July 2, 2009, Plaintiff elected to remit payments of the Special Assessment over a period of ten years at the rate of $123 per month, or a total amount owing of $14,760. (*Id.* at ¶ 8).

2

Beginning in early 2013, Plaintiff was unable to timely pay the monthly special assessments, and he stopped paying altogether in April 2013. (ECF. No. 46-2 at ¶ 17). On September 30, 2014, Plaintiff filed for Chapter 7 bankruptcy. Within his bankruptcy filing, Plaintiff listed his outstanding debts, including a $25,000 claim owed to "Community Association Bank – Mutual of Omaha" with a description of "Revens [sic] Crest Renovation Project Loan (not sure of balance)." (*Id.* at 56). This filing also reflected another claim of $8,250.48 owed to Executive Property Management, which described the debt as "Ravens Crest Condo Association fees." (*Id.* at 57).

According to Plaintiff, his debts were discharged on January 9, 2015, by Order of the Bankruptcy Court; this discharge apparently included the debt identified as "Community Association Bank," which represents the amount owed to Capital One Bank by the Association. However, this is questionable since the Association executed the loan with Capital One Bank, and the Association agreed to have Plaintiff pay a special assessment for ten years. As such, this loan was not an outstanding debt of Plaintiff's. Secondly, identifying the alleged debt as "Community Association Bank," rather than as Capital One Bank, may have been insufficient to give creditors appropriate notice of the bankruptcy proceeding.

On October 7, 2015, Plaintiff received a collection letter from the law firm of Cutolo Mandel LLC, signed by an associate, Jason S. Sena. (ECF No. 48-1 at 56). In this letter, Defendants explained that, as of October 1, 2015, Plaintiff owed the Association $4,944.00 and additional attorney's fees and costs of $116.64, for a total debt of $5,060.64 from the day of his bankruptcy filing. (*Id.*). Plaintiff responded to this letter two days letter, disputing any owed debt given his bankruptcy discharge and requesting verification of his debt. (DSOMF at ¶ 18). One week later, on October 16, 2015, Defendants provided Plaintiff with a copy of his occupant ledger

3

with the Association, which outlined his current balance. (ECF No. 48-1 at 31). Plaintiff continued to contend that he was no longer responsible for paying the special assessment, since these debts were discharged as part of the bankruptcy proceeding, and objected to payment of any late fees, since the Association failed to provide him with an accounting of amounts due. (DSMOF at ¶ 21). In a letter dated November 6, 2015, Defendants explained to Plaintiff that, under the United States Bankruptcy Code, he remained liable for payment of the special assessments that were due and payable after his bankruptcy filing. (ECF No. 48-2 at 4). Additionally, it was explained that Plaintiff remained responsible for any late fees imposed under to the New Jersey Condominium Act and the Association's Master Deed. (*Id.*).

On April 8, 2016, Defendants wrote to Plaintiff, notifying him that "[t]he Association directed [the firm] to prepare and record a lien against your property reflecting outstanding maintenance fees, late charges, special assessments, accelerated maintenance through 2016 and attorney fees and costs." (ECF No. 48-1 at 18). Plaintiff continued to dispute his payment obligations, contending the Chapter 7 bankruptcy discharged him of his payment duties, and requested accounting that corresponded to his purportedly owed debts. (DSOMF at ¶ 29).

On May 21, 2016, Plaintiff received a copy of the recorded lien against his property, which was recorded in Middlesex County on May 11, 2016. (ECF No. 48-1 at 27). In a cover letter, Defendants explained to Plaintiff that, "[u]ntil such time as you pay the Association all amounts due, you will be unable to convey clear title to your unit." (*Id.*). The lien included only the amounts that became due after the filing of the September 30, 2014 bankruptcy petition:

| | |
|---|---|
| Maintenance Fees (10/2014 - 4/2016) | $4,708.00 |
| Renovation Project / Special Assessment (10/2014 – 4/2016) | $2,318.00 |
| Late Fees | $ 270.00 |
| Accelerated Maintenance (4/2016 - 12/2016) | <u>$2,072.00</u> |
| TOTAL ASSESSMENT FEES & LATE FEES DUE | $9,368.00 |
| Attorneys' Fees & Costs | <u>$ 769.38</u> |

4

**TOTAL AMOUNT DUE:** ***$10,137.38***

(*Id.*). Significantly, this letter did not seek collection of Plaintiff's pre-petition debt of $8,364.48. Plaintiff responded to this letter, requesting an itemized accounting of the amounts listed in the lien, and again he contended that the lien reflected debts that were discharged in his bankruptcy proceeding. (Complaint at ¶ 13). According to the Complaint, Plaintiff never received the requested itemized accounting (*Id.* at ¶¶ 17-20); however, Defendants contend these documents were in fact provided. (DSOMF at ¶ 41).[1]

Plaintiff brings this cause of action under the FDCPA and Bankruptcy Code. Specifically, under Count One, Plaintiff claims Defendants' failure to provide an itemized accounting of Plaintiff's debts violates 15 U.S.C. §§ 1692e, 1692f, and 1692g. Under Count Two, Plaintiff maintains that Defendants violated 15 U.S.C. §§ 1692c – 1692g, by failing to mention in the lien filed with Middlesex County that a portion of it was in dispute. Under Count Three, Plaintiff claims Defendants engaged in "coercive and abusive" efforts to collect debts contrary to 11 U.S.C. § 362(a)(6). Under Count Four, Plaintiff contends that Defendants have made false and misleading representations of the status and amount of debt owed. And, under Count Five, Plaintiff challenges the various fees and costs included on the lien.

## LEGAL STANDARD

---

[1] In his statement of material facts, Plaintiff attaches a "Certificate of Amount of Unpaid Assessments," which was prepared by the Association's property manager, Thomas Boland, on November 1, 2016. (ECF No. 56-5 at 16). The certificate reported, "$8,364.48 in assessments accruing prior to the time Mr. Owoh filed for bankruptcy in September 2014 which have been discharged as to him personally but still attach as a lien to Unit 2017." (*Id.*). However, this document was prepared by Mr. Boland, not Defendants, and Mr. Boland is not a named defendant in this FDCPA suit. Moreover, there is no evidence that this certificate was filed in Middlesex County, for purposes of recording a lien against the unit for unpaid pre-petition special assessments.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). " [U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor "that no

reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 F. App'x. 222, 227 (3d Cir. 2007).

## ANALYSIS

Defendants move for summary judgment of Plaintiff's claims on the basis that the undisputed facts show they did not violate any sections of the FDCPA and sought to collect the proper amount of debt.

"The primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices, including threats of violence, use of obscene language, certain contacts with acquaintances of the consumer, late night phone calls, and simulated legal process." *FTC v. Check Investors, Inc.*, 502 F.3d 159, 165 (3d Cir. 2007). "To state a claim under the FDCPA, a plaintiff must allege that '(1) [he] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt.'" *Thomas v. Youderian*, 232 F. Supp. 3d 656, 671 (D.N.J. 2017) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)). Because both parties' briefs focus on the fourth-factor, the Court limits its discussion to addressing whether Defendants have violated any provision under the FDCPA in attempting to collect debt.

*Count I: Failure to Provide Debt Verification*

Under Count I, Plaintiff claims Defendants violated FDCPA by failing to provide an itemized accounting of Plaintiff's debt after it was requested, contrary to Section 1692g. Defendants contend that since they properly responded to Plaintiff's request, this claim should be dismissed. The Court agrees.

Section 1692g(a) requires a debt collector to provide the following information to a debtor:

7

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor

15 U.S.C. § 1692g(a). The "debt validation provisions of section 1692g" are intended to ensure that consumers receive adequate notice of their rights under the FDCPA and "eliminate abusive debt collection practices." *Caprio v. Healthcare Revenue Recovery Group, LLC*, 709 F.3d 142, 148 (3d Cir. 2013). "The Act further mandates the debt collector to cease all collection efforts if the consumer provides written notice that he or she disputes the debt or requests the name of the original creditor until the debt collector mails either the debt verification or creditor's name to the consumer." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000).

Here, the uncontroverted evidence demonstrates that on October 16, 2015, a week after Plaintiff disputed his debt, Plaintiff received an itemized ledger of his alleged debt from Defendants, which was done well-before Defendants sent further collection notices or executed the lien. It is unpersuasive that Plaintiff's repeated requests for verifications demonstrate an FDCPA violation. "There is no provision under the FDCPA which permits a consumer to repeatedly dispute a debt and repeatedly receive verification. To allow a consumer to do so would lead to the illogical result that a consumer could avoid paying its debt by repeatedly disputing the

debt." *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 371 (D. Conn. 2012). Therefore, given that a reasonable trier of fact would conclude that Defendants did not violate Section 1692g, Count I will be dismissed.

*Count II: Communication in Connection With Debt Collection*[2]

In Count II, Plaintiff alleges Defendants violated the FDCPA by failing "to inform the Middlesex County Clerk's Office that the debt is being disputed." Defendants contend that Plaintiff's claim finds no support under the FDCPA. The Court agrees.

Section 1692c(b) generally prohibits debts collectors from communicating with third parties in connection with the collection of debt "*except* as reasonably necessary to effectuate a postjudgment judicial remedy." (emphasis added). As such, "There is no cause of action under the FDCPA for an attorney's communication with a forum in pursuit of a legal remedy." *Cohen v. Wolpoff & Abramson, LLP*, No 08-1084, 2008 U.S. Dist. LEXIS 77052 at *15 (D.N.J. Oct. 2, 2008). Here, the basis of Plaintiff's claim is Defendants' filing of the lien with a county clerk. However, this filing was necessary in order for Defendants to perfect their lien, as required under N.J.S.A. § 46:8B-21(a). It is unclear how perfecting a lien with a county clerk would constitute a "communication" or "debt collection" as defined under the Act. In fact, the court in *Derisme* addressed a similar issue, whether filing a foreclosure action constituted debt collection under Sections 1692g and 1692e of the FDCPA. 880 F. Supp. 2d at 358. The court ultimately held that "a foreclosure action is not a legal action to enforce a debt but rather an equitable action to enforce a security interest rather than a debt collection." *Id.* Here, the Court reaches the same conclusion, Defendants' filing of the lien was a necessary action to secure an interest on the unit in order to

---

[2] The court briefly notes that Plaintiff's reliance on Sections 1692d (harassment or abuse), 1692e(false or misleading representations), 1692f (unfair practices), and 1692g (validation of debt) are unfounded.

9

proceed on an equitable action; therefore, it does not fall within any proscribed conduct under the FDCPA. Therefore, summary judgment is granted as to Count II.

*Count III: Coercive and Abusive Tactics*

In Count III, Plaintiff generally alleges, "Defendants' coercive and abusive effort to collect debts that were discharged in bankruptcy violates both the Fair Debt Collection Practices Act and the automatic stay provisions of the United State Bankruptcy Code." Defendants contend that since they were entitled to collect post-petition debt, Plaintiff's argument is without merit. The Court agrees.

In bankruptcy proceedings, a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524. However, 11 U.S.C. § 523(a)(16), excepts from its global discharge of debtor liability a debtor's obligation to pay the special assessments. Specifically, under Section 523(a)(16) a debtor remains liable, post discharge:

> for a fee or assessment that becomes due and payable after the order for relief to a membership association with respect to the debtor's interest in a unit that has condominium ownership, in a share of a cooperative corporation, or a lot in a homeowners association, for as long as the debtor or the trustee has a legal, equitable, or possessory ownership interest in such unit.

11 U.S.C. § 523(a)(16). Courts that have addressed this exception have understood this Section to treat "postpetition condominium assessments" as non-discharged debt obligations. *See In re Hawk*, 314 B.R. 312, 316 (Bankr. D.N.J. 2005) ("postpetition condominium assessments constitute claims within the definition of 11 U.S.C. § 101(d)" (internal quotation marks and citation omitted)); *see also In re Mattera*, 203 B.R. 565, 572 (Bankr. D.N.J. 1997) (discussing the legislative history behind the 1994 amendments to Section 523(a) reflects Congress's intention to no longer discharge

"post-petition assessments"). Therefore, Plaintiff remained liable for fees and assessments related to the Association after he filed for bankruptcy (September 30, 2014); as such, summary judgment is granted as to Count III.

*Count IV: Deceptive and Misleading Representations*

Under Count IV, Plaintiff claims that Defendants have "made false, deceptive and misleading representation[s] about the character, amount, and legal status of the debt." Here, Plaintiff contends Defendants have engaged in false and misleading representations based on the lien it filed in the Middlesex County Clerk's Office and the $10,137.38 reportedly due. The Court disagrees.

Section 1692e states, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Specifically, debt collectors are prohibited from misrepresenting "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). In analyzing communications between purported debt collectors and plaintiffs, courts routinely apply the "least sophisticated debtor" standard. *Kaymark*, 783 F.3d at 174; *Youderian*, 232 F. Supp. 3d at 671. "We use the least 'sophisticated debtor' standard in order to effectuate 'the basic purpose of the FDCPA: . . . to protect 'all consumers, the gullible as well as the shrewd' . . . .'" *Rosenau v. Unifund Corp.*, 539 F.3d 218, 219 (3d Cir. 2008). "Although the 'least sophisticated debtor' standard is a low standard, it prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.* (internal quotation marks and citations omitted).

As best the Court can tell, Plaintiff believes that the bankruptcy court excused him of future assessment obligations. There is no evidence submitted suggesting the same. As discussed above,

he remained liable for unpaid assessments post-petition, which is exactly what Defendants have sought to collect. *See* 11 U.S.C. § 523(a)(16). The Court also notes that Defendants prepared a valid lien for the post-petition debt pursuant N.J.S.A. § 46:8B-21(a). The May 11, 2016 lien was properly recorded in Middlesex County, which provided a description of the unit, identified Plaintiff as the owner of the unit, and listed the amount due.[3]

The Court is also unpersuaded by Plaintiff's reliance on the "Certificate of Amount of Unpaid Assessments,"[4] which reported total debt of $19,179.39, which is significantly greater than the sums set forth in the lien. Notably, the certificate was prepared by the Association, not Defendants, and there is no evidence that Defendants were responsible for the Association's preparation of the certificate. In addition, there is no evidence that this certificate was ever filed with the county clerk. Simply put, even when viewing the record in the light most favorable to Plaintiff, a reasonable trier of fact would not conclude that Defendants have violated Section 1692e; therefore, summary judgment as to Count IV is granted.

*Count V: Attorney's Fees, Maintenance Fees, and Other Costs*

Finally, in Count Five, Plaintiff generally asserts that Defendants' lien violated the FDCPA because it sought fees and costs that were not itemized and not actually owed by Plaintiff. Specifically, Plaintiff claims the following charges are in violation of the FDCPA: (1) "attorneys' fees and costs"; (2) "accelerated maintenance"; (3) "late fees"; (4) "renovation project/special assessment"; and (5) "maintenance fees." (Complaint at ¶ 34). The Court disagrees.

---

[3] Because this case arises from actions related to the collection of post-petition debt, the Court offers no opinion on whether the pre-petition special assessment ($8,364.48) may be subjet to a lien.

[4] Plaintiff also relies on reports that were not prepared or supplied by Defendants, such as a "Compliance and Pool Eligibility Report," to demonstrate contradicting amounts due. However, since Defendants did not represent these reports to Plaintiff, the Court will not consider them.

As discussed above, the New Jersey Condominium Act permits associations, through their Master Deed and Bylaws, to place liens on units that are delinquent on their assessments, as well as additional late fees, fines and reasonable attorney fees. N.J.S.A. § 46:8B-21(a). Here, Defendants, as counsel to the Association, have done exactly that, setting forth the grounds upon which such fees and costs can be imposed against units that have not timely paid their assessments. (ECF No. 46-2).

Finally, Plaintiff's reliance on *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 246-48 (3d Cir. 2014) and *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174-76 (3d Cir. 2015) do not compel a different result. In *McLaughlin*, the Third Circuit held that a debt collector's failure to accurately set forth the amount due constituted a violation under Sections 1692e(2) and (10). Similarly, in *Kaymark*, the court held that law firm's attempt to charge estimated fees for services not yet performed constituted misrepresentations actionable under the FDCPA. Here, Plaintiff has not shown that such actions occurred herein. Therefore, since Plaintiff fails to identify any possible violation of the FDCPA, summary judgment is granted as to Count V.[5]

## Conclusion

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this _6th_ day of _March_, 2018,

ORDERED that Defendant's Motion for Summary Judgment (ECF No. 46) is **GRANTED**; and it is further

ORDERED that Plaintiff's Cross-Motion for Summary Judgment (ECF No. 57) is **DENIED**; and it is further

---

[5] Because the Court concludes that Defendants have not violated the FDCPA, there is no reason to address Defendants' affirmative defense of bona fide error.

13

ORDERED that Plaintiff's motion for leave to appeal (ECF No. 43) is **DENIED** as moot.


                                                          */s/ Peter G. Sheridan*
                                                       PETER G. SHERIDAN, U.S.D.J.